NOT FOR PUBLICATION [17]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil Action No. 11-1035 (FLW) |
| v. | |
| HARRY RUTIGLIANO, RICHARD RUTIGLIANO, et al., | OPINION |
| Defendants. | |

**WOLFSON, United States District Judge:**

Presently before the Court is a Motion brought by Defendants Harry Rutigliano and Richard Rutigliano ("Defendants" or the "Rutiglianos") to Dismiss Counts I and III of Plaintiff's Amended Complaint. The instant motion arises from an Amended Complaint filed by Plaintiff, the United States of America ("Plaintiff" or the "United States"), that seeks a judgment against Harry Rutigliano for trust fund taxes pursuant to 26 U.S.C. § 6672 and to foreclose its federal tax liens against three parcels of real property located in Forked River, New Jersey. The instant motion is limited to Count I and Count III. For the reasons that follow, Defendants' motion is DENIED.

**I. BACKGROUND**

In addressing Defendants' Motion to Dismiss, this Court must accept as true the allegations contained in the Complaint. See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446,

457 (3d Cir.2003); Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1301 (3d Cir.1996).  Thus, the facts recited herein are taken from the Amended Complaint and do not represent this Court's factual findings.

A. Harry Rutigliano's Tax Liability

Harry Rutigliano is indebted for employment (FICA) taxes and unemployment (FUTA) taxes in connection with his ownership of Ida Welding.  Specifically, Harry Rutigliano owes unpaid FICA taxes, penalties and interest for the second through fourth quarters of 1989 and all four quarters of 1990.  He is also indebted for unpaid FUTA taxes for periods ending December 21, 1989 and December 31, 1990.  The IRS assessed these liabilities against Harry Rutigliano on December 26, 1994, and gave "notice and demand for payment of these unpaid taxes and statutory additions on that same date."  Amended Compl. ¶ 9.  The IRS filed a notice of federal tax lien with respect to the aforementioned tax liability in Ocean County, New Jersey on November 17, 1995.

On December 22, 2004, the United States filed a Complaint in this Court to collect the trust fund taxes that were the subject of the 1994 assessment and 1995 tax lien. The Government re-filed the 1995 tax lien against Harry Rutigliano in the Ocean County Clerk's Office on or about January 14, 2005.  On May 23, 2006, the court entered an Order in Civ. A. No. 04-6352 in favor of the United States and against Harry Rutigliano with respect to the aforementioned tax liabilities.  The amount of the judgment was $300,891.48 plus interest. [1]

---

[1] In addition, Count II of the Amended Complaint asserts claims related to the IRS' June 2007 assessment of new trust fund penalties on Harry Rutigliano as the "responsible person of Nicholas Fabricating."  Compl. ¶ 14.  This new assessment related to trust fund amounts due and

B. <u>Interest in Real Property</u>

By deed dated August 23, 1994, and recorded September 29, 1994, Harry Rutigliano purchased real property located at 915 Chelsea Street, Forked River, New Jersey.[2] On April 14, 1997, more than two years after the federal tax liens had arisen and attached to all of Harry Rutigliano's property, including property located at 915 Chelsea Street, Forked River, New Jersey ("Chelsea Street property"), Harry Rutigliano transferred the Chelsea street property to his brother, Richard Rutigliano, for stated consideration of $1.00. In addition, the following other named Defendants – Chase Manhattan Mortgage Corp., Granite State Insurance Company, River Medical Imaging and State of New Jersey – may claim an interest in the Chelsea Street property by virtue of having a mortgage or judgment recorded in Ocean County, New Jersey, against Harry Rutigliano.[3]

---

owing from all four quarters of 2002, 2003 and 2004 as well as the first quarter of 2005. In addition, Count IV concerns property located at 10 Taylor Lane, Forked River, New Jersey, and Count V concerns property located at 12A Taylor Lane, Forked River, New Jersey. Because the motion before me only concerns Counts I and III and does not concern the assessments described in Count II or the property described in Counts IV or V, the Court need not discuss them here.

[2]The Court notes that the Amended Complaint also concerns two additional pieces of real property owned by Harry Rutigliano. Because these properties are not relevant to the instant motion, the Court need not discuss these properties at this time.

[3]Specifically, Defendant Chase Manhattan Mortgage Corp., may claim an interest in the Chelsea Street property by virtue of its having a mortgage lien recorded in Ocean County, New Jersey on September 4, 2002. Similarly, Granite State Insurance Company may claim an interest in the Chelsea Street property by virtue of its having recorded a judgment in Ocean County, New Jersey on September 23, 2004 against Harry Rutigliano. In addition, Defendant River Medical Imaging may claim an interest in the Chelsea Street property by virtue of its having recorded a judgment in Ocean County, New Jersey on June 15, 2010 against Harry Rutigliano. Finally,

C. <u>The Instant Action</u>

The Government filed the instant case on February 23, 2011, and filed an Amended Complaint on March 17, 2011. The Amended Complaint asserts five causes of action against the Rutiglianos and additional parties who may have an interest in Harry Rutigliano's property. In the first Count, the Government seeks a determination that it has valid and subsisting liens against Harry Rutigliano's property and that those liens arose as a result of tax assessments against Harry Rutgliano for FICA and FUTA taxes. The second Count seeks a determination that Harry Rutigliano is liable under 26 U.S.C. § 6672 for trust fund recovery penalties and that the government has valid and subsisting liens with respect to these liabilities that arose on June 11, 2007. Counts three through five seek to foreclose the federal tax liens against three different parcels of real property located in Ocean County, New Jersey. Specifically, and in relevant part, the third Count asserts that, after tax liens had arisen against him, Harry Rutigliano transferred the Chelsea Street property to his brother, Richard and, as a result, that Richard took title to this property subject to the federal tax liens.

**II. STANDARD OF REVIEW**

When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v.</u>

---

Defendant State of New Jersey may claim an interest in the Chelsea Street Property by virtue of its recording a certificate of debt against Harry Rutigliano.

County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element'." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the following principles.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949  (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 1950. The plausibility standard requires that "the plaintiff plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S.Ct. At 1949 (quoting Twombly, 550 U.S. at 556). Ultimately, "a

5

complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.  In evaluating a motion to dismiss, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

In the instant matter, Defendants move to dismiss Counts I and III of Plaintiff's Amended Complaint.  Specifically, Defendants argue that Count I should be dismissed because the Government already obtained a default judgment against Harry Rutigliano in 2006, thus, Count I seeks only "a second judgment relating to the liens for the amounts for which it has already obtained a judgment." Defs' Br. at 6.  In addition, Defendants argue that Count III should be dismissed because the Government cannot foreclose on a property that Harry Rutigliano does not own and that is, instead, owned by Defendant Richard Rutigliano.  The Court will consider each of Defendants' arguments in turn.

### A. Count I

Count I of Plaintiff's Complaint seeks a determination that the government has valid and subsisting tax liens against Harry Rutigliano's property and that these liens arose on December 16, 1994, as a result of tax assessments for unpaid FICA and FUTA taxes.  In the instant motion, Defendants argue that the Court should dismiss Count I because the Government has already

obtained a prior judgment on the same lien.  Thus, Defendants argue that Count I "simply does not state a claim upon which relief can be granted."  Def's Rep. at 2.  The Court does not agree.

Initially, the Court notes that Defendants cite no case law whatsoever in support of the proposition that the government cannot seek to enforce the Judgment it received in the 2004 action by way of the instant action.  Conversely, it appears that the Government may seek to enforce federal tax liens against real property as a result of an earlier judgment against a taxpayer.  See, e.g., United States v. Hodes, 355 F.2d 746, 749 (2d Cir. 1966).

Moreover, contrary to Defendants' assertion that Count I of the Amended Complaint is merely an attempt by the government to "seek[] reassurance from ths Court that it has in fact obtained a default judgment," the Court finds that the language of Count I is sufficiently broad and seeks both a declaration "that the United States has valid and subsisting liens against Harry Rutigliano's property and rights to property with respect to the" FICA and FUTA taxes as well as "such other and further relief as is just and proper."  Complaint at 3-4.  Thus, unlike the 2004 action which only sought to reduce tax assessments to Judgment and, specifically, sought only monetary relief as a result of the FICA and FUTA taxes, the 2011 action seeks additional and different relief; specifically, in this action the Government seeks a declaration that it has valid liens against Harry Rutigliano's property and property rights as they existed at the time the assessments were made.  Thus, the Court finds that despite Plaintiffs' assertions to the contrary, Count I of the Amended Complaint properly seeks to enforce the judgment the Government received in 2006 against Harry Rutigliano's property and, therefore,  that the Dismissal of Count

I is not warranted.[4]

    B. Count III

Count III of Plaintiff's Complaint seeks to foreclose the federal tax liens against the Chelsea Street property.  Specifically, in Count III the Government alleges that Harry Rutigliano transferred the Chelsea steret property to his brother, Richard Rutigliano, in 1997, years after the federal tax liens had arisen and attached to all of Harry Rutigliano's property.  Thus, the Government contends that Richard Rutigliano took ownership of this property subject to the federal tax liens against Harry Rutigliano's property.

In the instant motion, Defendants argue that Count III should be dismissed.  Specifically, Defendants contend that because Harry Rutigliano no longer owns the Chelsea Street property, the Government has not named the proper parties in the suit.  In addition, Defendants appear to argue that if the Government "seeks to extinguish Richard Rutigliano's rights to his property, then it seemingly must do so within the confines of New Jersey's Fraudulent Conveyance Act." Defs' Br. at 7.  The Court does not agree.

Initially, the Court notes that despite Defendants' assertion that the Government has named the wrong parties to the suit because it is suing "Harry Rutigliano for property that is not owned or possessed by Harry Rutigliano," Def's Rep. at 7, the Amended Complaint quite clearly and expressly names Richard Rutigliano as a Defendant in the action.   Thus, the Government has named the proper parties to the suit.  Moreover, to the extent that the Defendants take issue

---

[4]Although the Court does not read the Complaint this way, to the extent that Count I of the Amended Complaint is seeking a second judgment relating to the amount of the liens for which it has already obtained a judgment, such relief would be improper.

with the fact that the various Counts in the Complaint are not asserted against any particular Defendant, the Court finds that it is wholly logical that Count III is asserted against Richard Rutigliano; indeed, this conclusion is bolstered by the fact that the allegations contained in paragraphs 21 and 24 of the Amended Complaint, counts which are subsumed under Count III, refer expressly to Richard Rutigliano.  For these reasons, the Court finds Defendants' argument that the Government did not name the proper parties to be entirely without merit.

     Next, to the extent that the Defendants argue that because the Government did not name the proper parties to the transaction, the Government may only proceed within the confines of the New Jersey Fraudulent Uniform Fraudulent Transfer Act ("NJUFTA"), Defendants are mistaken.  First, as discussed above, by naming Richard Rutigliano as well as the other entities who may claim an interest in the Chelsea Street property, the Court finds that the Government did name the proper parties to the action and, therefore, the Government need not proceed under the NJFTA.  Indeed, pursuant to 26 U.S.C. § 7403, "[i]n any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof . . . the Attorney General or his delegate . . . <u>may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability</u>."  26 U.S.C. § 7403 (emphasis added).  Moreover, it is axiomatic that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States <u>upon all property and rights to property</u>, whether real or personal, belonging to such person."  26 U.S.C. § 6321.  Importantly, such a tax lien arises at the time the tax is assessed.  <u>See</u> 26 U.S.C. § 6322; <u>In re DeAngelis</u>, 373

F.2d 755, 757 (3d Cir.1967) ("[N]on-payment of taxes after demand creates a lien commencing at the assessment date.")  Thus, the "transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere. . .'" United States v. Bess, 357 U.S. 51, 57 (1958).

In the context of this case, the federal tax liens were assessed on December 26, 1994 and, therefore, the tax liens attached on that same date.  See 26 U.S.C. § 6322; In re DeAngelis, 373 F.2d at 757.  Thus, the tax liens arose against Harry Rutigliano's Chelsea Street property in December 1994, more than two years before he transferred the property to Richard Rutigliano, and, as a result, Richard Rutigliano took the property subject to the liens and the Government may seek to enforce its liens against the property in this action.  See 26 U.S.C. § 7403.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED.  An appropriate Order will follow.

Dated: November 7, 2011                                              /s/ Freda L. Wolfson
                                                                                        Freda L. Wolfson, U.S.D.J.